UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DATAART ENTERPRISES, INC.,

                         Plaintiff,

    -against-

OLEG ROMASHIN, ANTON ROGAINIS and
DMITRY ROZHKOV,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Index No.

COMPLAINT

ECF CASE

Jury Trial Demanded

     Plaintiff DataArt Enterprises, Inc. ("DataArt"), by its attorneys, Lynch Rowin LLP,

for its complaint against defendant Oleg Romashin ("Romashin"), Anton Rogainis

("Rogainis") and Dmitry Rozhkov ("Rozhkov")(collectively referred to as the

"defendants"), states as follows:

THE PARTIES

    1.    DataArt is a domestic corporation with its principal place of business in New

York County, New York.

    2.    Romashin is a citizen of Russia.

    3.    Rogainis is a citizen of Russia.

    4.    Rozhkov is a citizen of Russia.

JURISDICTION AND VENUE

    5.    Subject matter jurisdiction of this action is predicated upon 28 U.S.C. §

1

1332(a)(2), in that this is an action (a) between a citizen of New York and citizens or subjects of a foreign state and (b) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over the defendants because defendants agreed to submit to the jurisdiction of a federal court located within the City of New York.

7.      Venue properly lies in this district by virtue of 28 U.S.C. § 1391(a)(3), in that the defendants are subject to personal jurisdiction in this district, and there is no district in which the action may otherwise be brought.

## THE FACTS

8.      DataArt develops software for small and medium sized enterprises and specializes in enterprise application development, systems integration and business automation tools.

9.      On or about July 14, 2005, Romashin entered into an Agreement Regarding Employment (the "Romashin Agreement") with DataArt, whereby Romashin agreed to be employed by DataArt and DataArt agreed to employ Romashin pursuant to the terms in the Romashin Agreement.

10.      Pursuant to a Restrictive Covenant in the Romashin Agreement, Romashin is prohibited from working for a DataArt client for a period of three years after the termination of his employment with DataArt:

> In consideration of considerable time, expense and effort made
> by DataArt in developing its business relationships and
> investments in your training and development as part of the
> DataArt organization, both of which you recognize as valuable,
> you agree that, without DataArt's written consent, which it
> may withhold in its discretion, you will not (a) for a period of
> three (3) years after the termination of your employment from
> DataArt work directly or indirectly (for example, through
> another business organization) for any Client or DataArt
> software development reseller of DataArt services with which
> DataArt is currently doing business or has performed services
> within the preceding two (2) years prior to your termination of
> employment; or (b) while traveling to another city on DataArt
> business seek other employment or seek to reside in such other
> city.

11.    The Restrictive Covenant is reasonable, in that it serves a legitimate interest of DataArt, does not impose undue hardship on Romashin and is not injurious to the public.

12.    The Romashin Agreement also provides that, in the event of a breach by Romashin, DataArt is entitled to injunctive relief and liquidated damages in the amount of $100,000.

13.    The Romashin Agreement further provides that it is governed by the laws of the State of New York and that any lawsuit to enforce the Agreement can be brought in the City and State of New York.

14.    On or about November 1, 2005, Rogainis entered into an Agreement Regarding Employment (the "Rogainis Agreement") with DataArt, whereby Rogainis

3

agreed to be employed by DataArt and DataArt agreed to employ Rogainis pursuant to the terms in the Rogainis Agreement.

15.    Pursuant to a Restrictive Covenant in the Rogainis Agreement, Rogainis is prohibited from working for a DataArt client for a period of three years after the termination of his employment with DataArt:

> In consideration of considerable time, expense and effort made by DataArt in developing its business relationships and investments in your training and development as part of the DataArt organization, both of which you recognize as valuable, you agree that, without DataArt's written consent, which it may withhold in its discretion, you will not (a) for a period of three (3) years after the termination of your employment from DataArt work directly or indirectly (for example, through another business organization) for any Client or DataArt software development reseller of DataArt services with which DataArt is currently doing business or has performed services within the preceding two (2) years prior to your termination of employment; or (b) while traveling to another city on DataArt business seek other employment or seek to reside in such other city.

16.    The Restrictive Covenant is reasonable, in that it serves a legitimate interest of DataArt, does not impose undue hardship on Rogainis and is not injurious to the public.

17.    The Rogainis Agreement also provides that, in the event of a breach by Rogainis, DataArt is entitled to injunctive relief and liquidated damages in the amount of $100,000.

18.    The Rogainis Agreement further provides that it is governed by the laws of

the State of New York and that any lawsuit to enforce the Rogainis Agreement can be brought in the City and State of New York.

19.    On or about December 12, 2005, Rozhkov entered into an Agreement Regarding Employment (the "Rozhkov Agreement") with DataArt whereby Rozhkov agreed to be employed by DataArt and DataArt agreed to employ Rozhkov pursuant to the terms in the Rozhkov Agreement.

20.    Pursuant to a Restrictive Covenant in the Rozhkov Agreement, Rozhkov is prohibited from working for a DataArt client for a period of three years after the termination of his employment with DataArt:

> In consideration of considerable time, expense and effort made by DataArt in developing its business relationships and investments in your training and development as part of the DataArt organization, both of which you recognize as valuable, you agree that, without DataArt's written consent, which it may withhold in its discretion, you will not (a) for a period of three (3) years after the termination of your employment from DataArt work directly or indirectly (for example, through another business organization) for any Client or DataArt software development reseller of DataArt services with which DataArt is currently doing business or has performed services within the preceding two (2) years prior to your termination of employment; or (b) while traveling to another city on DataArt business seek other employment or seek to reside in such other city.

21.    The Restrictive Covenant is reasonable, in that it serves a legitimate interest of DataArt, does not impose undue hardship on Rozhkov and is not injurious to the public.

22.    The Rozhkov Agreement also provides that, in the event of a breach by Rozhkov, DataArt is entitled to injunctive relief and liquidated damages in the amount of $100,000.

23.    The Rozhkov Agreement further provides that it is governed by the laws of the State of New York and that any lawsuit to enforce the Rozhkov Agreement can be brought in the City and State of New York.

24.    While employed by DataArt, Romashin was sent to Finland to work on a project for Nokia Corporation, one of DataArt's clients. Romashin worked on the Nokia project from on or about July 14, 2005 to on or about December 29, 2006, when Romashin resigned as an employee of DataArt.

25.    While employed by DataArt, Rogainis was sent to Finland to work on a project for Nokia Corporation, one of DataArt's clients. Rogainis worked on the Nokia project from on or about November 1, 2005 to on or about December 29, 2006, when Rogainis resigned as an employee of DataArt.

26.    While employed by DataArt, Rozhkov was sent to Finland to work on a project for Nokia Corporation, one of DataArt's clients. Rozhkov worked on the Nokia project from on or about December 12, 2005 to on or about December 29, 2006, when Rozhkov resigned as an employee of DataArt.

27.    Beginning on or about January 4, 2007, Romashin began working in Finland

6

for a subsidiary, affiliate or subcontractor of Nokia called Nomovok Ltd. ("Nomovok"), which performs work for Nokia.

28.     Beginning on or about January 4, 2007, Rogainis began working in Finland for Nomovok, which performs work for Nokia.

29.     Beginning on or about January 4, 2007, Rozhkov began working in Finland for Nomovok, which performs work for Nokia.

30.     On or about April 23, 2007, DataArt, through its counsel, advised Romashin that his employment by Nomovok was a breach of the Romashin Agreement because it constituted indirect employment by Nokia, a client of DataArt. Thus, DataArt, through its counsel, demanded that Romashin immediately end his employment with Nomovok.

31.     On or about April 23, 2007, DataArt, through its counsel, advised Rogainis that his employment by Nomovok was a breach of the Rogainis Agreement because it constituted indirect employment by Nokia, a client of DataArt. Thus, DataArt, through its counsel, demanded that Rogainis immediately end his employment with Nomovok.

32.     On or about April 23, 2007, DataArt, through its counsel, advised Rozhkov that his employment by Nomovok was a breach of the Rozhkov Agreement because it constituted indirect employment by Nokia, a client of DataArt. Thus, DataArt, through its counsel, demanded that Rozhkov immediately end his employment with Nomovok.

33.     To date, Romashin has not terminated his employment with Nomovok.

34.    To date, Rogainis has not terminated his employment with Nomovok.

35.    To date, Rozhkov has not terminated his employment with Nomovok.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against Romashin)

36.    Paragraphs 1 through 35 are re-alleged.

37.    Romashin entered into a valid and binding employment contract with DataArt.

38.    DataArt has performed all of its obligations under the contract.

39.    Romashin has materially breached the contract by working for a DataArt client within three years of terminating his employment with DataArt.

40.    By reason of the foregoing, DataArt is entitled to liquidated damages in the amount of $100,000.

## SECOND CAUSE OF ACTION
### (Injunctive Relief Against Romashin)

41.    Paragraphs 1 through 40 are re-alleged.

42.    Pursuant to the Romashin Agreement, Romashin is prohibited from working for a DataArt client for a period of three years after the termination of his employment with DataArt.

43.    By reason of the foregoing, Romashin should be permanently enjoined from working for Nomovok or otherwise violating the Restrictive Covenant set forth in the

8

Romashin Agreement.

THIRD CAUSE OF ACTION
(<u>Breach of Contract Against Rogainis</u>)

44. Paragraphs 1 through 43 are re-alleged.

45. Rogainis entered into a valid and binding employment contract with DataArt.

46. DataArt has performed all of its obligations under the contract.

47. Rogainis has materially breached the contract by working for a DataArt client within three years of terminating his employment with DataArt.

48. By reason of the foregoing, DataArt is entitled to liquidated damages in the amount of $100,000.

FOURTH CAUSE OF ACTION
(<u>Injunctive Relief Against Rogainis</u>)

49. Paragraphs 1 through 48 are re-alleged.

50. Pursuant to the Rogainis Agreement, Rogainis is prohibited from working for a DataArt client for a period of three years after termination of his employment with DataArt.

51. By reason of the foregoing, Rogainis should be permanently enjoined from working for Nomovok or otherwise violating the Restrictive Covenant set forth in the Rogainis Agreement.

9

## FIFTH CAUSE OF ACTION
### (Breach of Contract Against Rozhkov)

52.     Paragraphs 1 through 51 are re-alleged.

53.     Rozhkov entered into a valid and binding employment contract with DataArt.

54.     DataArt has performed all of its obligations under the contract.

55.     Rozhkov has materially breached the contract by working for a DataArt client within three years of terminating his employment with DataArt.

56.     By reason of the foregoing, DataArt is entitled to liquidated damages in the amount of $100,000.

## SIXTH CAUSE OF ACTION
### (Injunctive Relief Against Rozhkov)

57.     Paragraphs 1 through 56 are re-alleged.

58.     Pursuant to the Agreement between Rozhkov and DataArt, Rozhkov is prohibited from working for a DataArt client for a period of three years after termination of his employment with DataArt.

59.     By reason of the foregoing, Rozhkov should be permanently enjoined from working for Nomovok or otherwise violating the Restrictive Covenant in the Rozhkov Agreement.

WHEREFORE, DataArt demands judgment in its favor and against the Defendants, as follows:

A.      On the First Cause of Action against Romashin, awarding it liquidated damages in the amount of $100,000;

B.      On the Second Cause of Action against Romashin, permanently enjoining Romashin from working for Nomovok or otherwise violating the Restrictive Covenant set forth in the Romashin Agreement;

C.      On the Third Cause of Action against Rogainis, awarding it liquidated damages in the amount of $100,000;

D.      On the Fourth Cause of Action against Rogainis, permanently enjoining Rogainis from working for Nomovok or otherwise violating the Restrictive Covenant set forth in the Rogainis Agreement;

E.      On the Fifth Cause of Action against Rozhok, awarding it liquidated damages in the amount of $100,000;

F.      On the Sixth Cause of Action against Rozhok, permanently enjoining Rozhok from working for Nomovok or otherwise violating the Restrictive Covenant set forth in the Rozhok Agreement;

G.      Awarding it the costs of this action, including reasonable attorneys fees; and

H.      Granting it such other relief as is just and proper.

11

Dated:  New York, New York
        August 27, 2007

                                              LYNCH ROWIN LLP

                                              By: _____
                                                  Marc Rowin(MR 6758)
                                            630 Third Avenue
                                            New York, New York 10017
                                            (212) 682-4001
                                            Attorneys for Plaintiff DataArt
                                              Enterprises, Inc.